United States District Court
for the
Southern District of Florida

Andrea Rosen Liebman, Appellant, )
)
v. ) Bankruptcy Appeal
) Case No. 17-22874-Civ-Scola
Ocwen Loan Servicing, LLC, and ) (BKC Docket No. 15-13372-AJC)
Futura Miami Invest, LLC, )
Appellees.

**Order Affirming Bankruptcy Court Order**

Andrea Rosen Liebman appeals the United States Bankruptcy Court for the Southern District of Florida's July 19, 2017 order: addressing various issues on remand from the district court; denying her motion to reinstate her Chapter 13 bankruptcy; and modifying a prior dismissal order. (Appellant's Am. Initial Br., ECF No. 8, 5.) Appellees Ocwen Loan Servicing, LLC, and Futura Miami Invest, LLC, both responded (Ocwen's Appellee Br., ECF No. 33; Futura's Appellee Br., ECF No. 31.) Liebman replied to both briefs. (Appellant's Reply, ECF No. 36.) For the following reasons, the Court **affirms** the bankruptcy court's order.

**1. Background**

This case involves a somewhat complicated procedural history and posture. In February 2015, Liebman filed a voluntary bankruptcy petition pursuant to Chapter 13 of the Bankruptcy Code. *See Liebman v. Neidich*, 15-13372-AJC, ECF No. 1 (Bank. S.D. Fla. Feb. 25, 2015) (docket entries in the underlying bankruptcy case are hereinafter identified as "Bankr. R." followed by the ECF No. of the entry). Less than two weeks later, Liebman's bankruptcy case was dismissed for filing deficiencies. (Bankr. R. ECF No. 7.) A month later, however, on April 9, 2015, in response to an emergency motion, the bankruptcy court reinstated Liebman's case. (Bankr. R. ECF No. 18.) That order, though, specifically excluded from the automatic stay the previously set foreclosure sale of Liebman's townhouse, which had been scheduled to proceed through the circuit court in Miami-Dade County on May 14, 2015. (*Id.* at 2.) The Court directed that sale to "proceed as scheduled, in due course, pending further order of this Court, or the state court." (*Id.*)

Thereafter, Liebman filed a motion to stay the foreclosure sale. (Bankr. R. ECF No. 24.) The bankruptcy court held a hearing on the motion, the day before the scheduled foreclosure sale, and, in open court, granted the motion to

stay the sale. (May 13, 2015 Hr'g Tr. at 12:16–19, Bankr. R. ECF No. 160.) The court labeled the stay, at one point, an "automatic stay." (*Id.*) Ocwen's counsel represented that she would "advise foreclosure to stay the sale." (*Id.* at 12:14–15.) The court advised Liebman's counsel to confer with Ocwen's counsel to finalize the form of the proposed order, reflecting the stay. (*Id.* at 12:24–13:2.) Despite the Court's oral order, and the parties' apparent agreement to stay the sale, the state court nonetheless proceeded with the foreclosure auction the following day, with the townhome selling to Futura, as the highest bidder. A paper order, reflecting that "[t]he automatic stay continues to be imposed until further order of this Court," was not entered until May 26, 2015, almost two weeks after the sale. (Am. Order, Bankr. R. ECF No. 46.)

After the sale of her home, Liebman filed an emergency motion for an order to show cause, also on May 26th. (Emerg. Mot., Bankr. R. ECF No. 43.) In that motion, Liebman asked the bankruptcy court, among other things, to enter an order requiring Ocwen to show cause why it failed to comply with the court's order to cancel the May 14th foreclosure sale; and to instruct Ocwen's counsel to cooperate with Liebman's counsel to obtain an order vacating the foreclosure sale. (*Id.* at 4.) At the hearing on that motion, on June 3, 2015, the court harshly criticized Liebman's counsel for not submitting a proposed order to the court regarding the stay. (*E.g.*, June 3, 2015 Hr'g Tr., Bankr. R. ECF No. 161, 5:1–3 ("Counsel, it sounds to me like you're confessing to malpractice."), 5:25–6:4 ("The order was directed to you to stop the sale if you wanted to stop it, but you failed to represent your client properly, and they may have lost their property."), 6:22–24 ("Where I see the failure is on the part of counsel for Ms. Liebman to have gotten an order entered and notify the clerk.").) During the hearing, however, Ocwen's counsel agreed to have the foreclosure sale vacated, contingent on the confirmation of Liebman's bankruptcy's plan. (*Id.* at 14:8–10.) Ultimately, in a written order entered on June 5, 2015, the bankruptcy court held in abeyance both the motion to vacate that was then pending in state court as well as the court's order staying the May 14th foreclosure sale. Both abeyances were pending the confirmation of Liebman's Chapter 13 plan which was scheduled for a hearing on June 16, 2015. (Order on Emerg. Mot., Bankr. R. ECF No. 61, 2.) The order provided that should Liebman's plan be confirmed, "the sale process in Circuit Court will be determined to be void in violation of the automatic stay." (*Id.*) On the other hand, the order also specified that if the plan was not confirmed, the court would vacate its order staying the foreclosure sale and the sale "shall be deemed valid." (*Id.*)

At the June 16th hearing, Liebman's plan was not confirmed. (June 16, 2015 Hr'g Tr., Bankr. R. ECF No. 171.) Despite Liebman's counsel's ardent plea that the plan was confirmable, notwithstanding Liebman's failure to timely provide all of the necessary materials and properly prepared schedules, the bankruptcy court nonetheless vacated its order staying the foreclosure sale and allowed the sale to proceed unchecked.

After the court denied Liebman's two pro se emergency motions for a rehearing, she filed, also pro se, an appeal, in July 2015, which was considered by United States District Court Judge Joan A. Lenard. Relying on the bankruptcy court's labeling of the stay in place when the state court proceeded with the foreclosure sale as an "automatic stay," Judge Lenard found that the sale was void *ab initio*. *Liebman v. Ocwen Loan Serv., Inc.*, 15-cv-22539-JAL, Order, ECF No. 45 (S.D. Fla. Sep. 7, 2016) ("J. Lenard Order"). On the other hand, however, Judge Lenard also noted that under "rare circumstances," bankruptcy courts could retroactively lift automatic stays. *Id.* at 11. As Judge Lenard opined, a court may retroactively lift a stay after evaluating a number of factors as set forth in *In re Stockwell*, 262 B.R. 275 (Bankr. D. Vt. 2001). Judge Lenard noted the bankruptcy court had nonetheless failed to consider any of these *Stockwell* factors when it decided to "annul the stay." J. Lenard Order at 13. As a result, she concluded, the bankruptcy court had "abused its discretion when it retroactively lifted the stay and sanctioned the foreclosure sale of [Liebman's] home." *Id.* She therefore remanded the case so that the bankruptcy court could "apply the appropriate legal standards and make supplemental findings." *Id.*

After Judge Lenard entered her remand order, Liebman continued to seek confirmation of her bankruptcy plan. Ultimately, however, in February 2017, the bankruptcy court denied confirmation of her proposed plan and dismissed her case with prejudice. (Order Denying Confirmation and Dismissing Ch. 13 Case, Bankr. R. ECF No. 246, 1.) Liebman filed motions to again reinstate her case and Ocwen asked the court to amend its February 2017 dismissal order. In response, and without a hearing, the bankruptcy court entered an order: denying Liebman's motion to reinstate; modifying its February 2017 dismissal order; and addressing the remand issues set forth by Judge Lenard. (Order on Remand, Bankr. R. ECF No. 322.) It is this order that Liebman appeals.

## 2. The Order Under Appeal

With respect to Judge Lenard's remand, the bankruptcy court's response was basically twofold. On the one hand, the court explained that it had improperly labeled its stay of the May 14, 2015 state court foreclosure sale as an "automatic stay" (as provided for under § 362 of the Bankruptcy Code) when, in fact, the court's true intent had been to enjoin the sale in accordance with § 105. (Order on Remand at 6.) The court clarified: "The amended Order should have omitted the word 'automatic' and simply have stated that the stay (or injunction) continues until further Court order." (*Id.*) By it terms then, the bankruptcy court's order on remand purported to modify the order staying the sale to reflect this change. (*Id.* at 17.) Accordingly, there was no automatic-stay or *Stockwell*-related barrier preventing the bankruptcy court from holding the § 105 stay (or injunction) in abeyance and then later vacating it. In other words, according to the bankruptcy court, there was nothing keeping it, based on the record in the case, from "lift[ing] or dissolv[ing] the injunction when the Debtor failed to confirm a Chapter 13 plan" and "granting relief nunc pro tunc" to Ocwen and Futura. (*Id.* at 8.)

Alternatively, the bankruptcy court opined, even if the stay imposed stopping the foreclosure sale was immutably deemed an automatic stay under § 362, the court's retroactive relief was nonetheless proper based on an evaluation of the seven *Stockwell* factors. *In re Stockwell*, 262 B.R. at 281 ("(1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken."). The bankruptcy court concluded that all seven *Stockwell* factors supported retroactive relief.

## 3. Discussion

In her initial brief, Liebman separates her issues on appeal into the following six concerns. (1) She complains that the bankruptcy court's modification of its foreclosure-sale stay order, changing the automatic stay under § 362 to an injunction or stay under § 105, is internally contradictory and therefore "void on [its] face." (2) Liebman next argues that she was denied due process when her proposed plan was not confirmed and the bankruptcy

court dismissed her case. (3) Third, Liebman submits that the bankruptcy court erred in concluding that Ocwen did not violate the automatic stay. (4) She further claims the bankruptcy court improperly evaluated and applied the *Stockwell* factors to the stay. (5) Although it is not entirely clear, it appears Liebman's fifth issue is that the bankruptcy court also erred by not finding the foreclosure sale void *ab initio*. (6) Lastly, Liebman insists that, contrary to the bankruptcy court's decision, her bankruptcy case must be reinstated.

### A. Issues (1) and (5): Liebman has failed to establish that the bankruptcy court erred in declining to vacate the foreclosure of her townhome.

Much of Liebman's appeal rests on her contention that the bankruptcy court erred when it retroactively modified its order staying the May 14, 2015 foreclosure sale of her townhome. In support of this argument, Liebman sets forth two discernible arguments. The Court does not find either of these arguments persuasive.

First, Liebman claims the bankruptcy court's modification of its stay order to reflect a stay under § 105 rather than § 362 is directly contradicted by the court's own determination, in the alternative, that the *Stockwell* factors would permit the court to retroactively annul the automatic stay. This argument lacks merit. The bankruptcy court simply presented alternative support for its ultimate conclusion that it had properly lifted or annulled the stay of the foreclosure. On the one hand, according to the bankruptcy court, the court had improperly applied the label of "automatic stay" when in reality the court had instead meant to issue an injunction. On the other hand, the court proceeded to evaluate the *Stockwell* factors in the event that, despite the court's modification, the stay was nonetheless deemed to be an automatic stay. While these two avenues for support of the court's ultimate conclusion may be mutually exclusive, Liebman has not provided, nor is the Court itself aware of, any justification for her position that a court may not present alternative bases for its ultimate conclusion. *See, e.g., Mays v. Chase Manhattan Mortg. Corp.*, 180 F. App'x 143, 144 (11th Cir. 2006) (noting without comment that "[t]he district court . . . presented an alternate basis for dismissal").

Next, Liebman argues that the bankruptcy court's order, modifying the language of its stay order, was in direct conflict with Judge Lenard's order remanding the case. One of Liebman's contentions rests on Judge Lenard's finding that the "foreclosure sale was void ab initio." J. Lenard Order at 8 n. 8. This finding, however, was premised on the bankruptcy court's characterization of the stay imposed as an automatic stay—which, as explained

above, has since been modified. Additionally, Judge Lenard herself also acknowledged that, even though, "[i]n this Circuit, actions taken in violation of the automatic stay are void ab initio," the Eleventh Circuit allows courts to nonetheless "retroactively lift automatic stays in rare circumstances." *Id.* at 10–11.

Aside from this purported conflict, Liebman does not otherwise clarify which part of Judge Lenard's order would prevent the bankruptcy court, upon remand, from modifying its prior order to correct what the bankruptcy court itself described as an erroneous identification of the type of stay that it had imposed. Nor has the Court itself located any such language. To be sure, Judge Lenard concluded that the bankruptcy court had "abused its discretion when it retroactively lifted the stay and sanctioned the foreclosure sale of [Liebman's] home." J. Lenard Order at 13. And accordingly, she remanded the case back to the bankruptcy court "to apply the appropriate legal standards and make supplemental findings." *Id.* Nothing in this directive, however, prevents the bankruptcy court from either (1) correcting its order to reflect the type of stay the court had intended to impose; or (2) in the alternative, applying the *Stockwell* factors. Without more, the Court does not find the bankruptcy court's order to be in conflict with Judge Lenard's instructions. Liebman has not presented any argument, never mind support, that would undermine the bankruptcy court's authority, upon remand from an appellate court, to modify part of an order that it asserts had been presented in error. *See* Fed. R. Civ. P. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."); *see also In re Solid Rock Dev. Corp., Inc.*, 481 B.R. 221, 228 (Bankr. N.D. Ga. 2012) (finding that a court can exercise jurisdiction to construe its own stay-relief order and its effect on a foreclosure sale) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)). Ultimately, Liebman has not convinced the Court that the bankruptcy court erred in declining to vacate the foreclosure sale of her home.

### B. Issues (2) and (6): Liebman has not established that the Court erred either in (a) not confirming her bankruptcy plan and dismissing her case or (b) declining to reinstate case.

The bankruptcy court, in its order denying Liebman's motion to reinstate her case, explained the following:

> The Debtor's failure to address the large sums owed to Deutsche/Ocwen, [Liebman's homeowners' association] and Futura do not support reinstatement of the case. This Debtor, and

> the non-debtor spouse, are not acting in good faith. Instead, they have utilized the Foreclosure Lawsuit and Foreclosure Appeals in a voluminous docket to their benefit—achieving substantial delay. After not having paid a mortgage or association fees for over 6 years, the Debtor cannot come to this Court and expect to receive the Bankruptcy Code's associated benefits without addressing the arrearages to Ocwen and Beach Club as well as reimbursement to Futura. The Debtor has been given repeated opportunities, with the assistance of counsel too, to file a confirmable plan. Debtor has failed. The last two plans filed by the Debtor improperly ignore the claims of the creditors, in contravention of this Court's prior orders.

(Order on Remand at 11.) Rather than explain to the Court what error she alleges the bankruptcy court made in dismissing her case, Liebman instead lists a number of expenses she and her husband have incurred and various wrongs she alleges she has suffered at the hands of the bankruptcy court, the bankruptcy trustee, and Ocwen.

However, "[a] district court reviewing a bankruptcy appeal is not authorized to make independent factual findings; that is the function of the bankruptcy court." *In re Spiwak*, 285 B.R. 744, 747–48 (S.D. Fla.2002) (citation omitted). "Factual findings made by the bankruptcy court are subject to a clearly erroneous standard." *Id.* (citation omitted). Conclusions of law are subject to de novo review. *Id.* (citation omitted). Equitable determinations are reviewed for abuse of discretion. *Id.* (citation omitted).

Although Liebman disagrees with the bankruptcy court's factual findings, she has not provided any support that would allow this Court to find that any of the findings are clearly erroneous. And although Liebman describes various hearings, rulings, and decisions as, "the epitome of contradiction," "a farce," "a complete sabotaging," a "fail[ure] to follow due process," "an intentional/fraudulent interference with the Confirmation Process," and "Arbitrary and Whimsical," she never explains why nor does she provide actual support for her ultimate conclusions. (Appellant's Am. Initial Br. at 16, 18–19.) While the Court typically affords a pro se litigant an abundance of leeway, it will not, without more guidance, develop Liebman's arguments on appeal for her. None of what Liebman has presented sufficiently undermines the bankruptcy court's legal conclusions or the facts upon which it based its dismissal and reinstatement denial.

### C. Issue (3): Liebman's complaint that the bankruptcy court failed to find that Ocwen willfully violated the stay of the foreclosure sale is unavailing.

The essence of Liebman's argument regarding her allegation that Ocwen willfully violated the bankruptcy court's automatic stay rests on the conflict between Judge Lenard and the bankruptcy court's orders regarding the sale during the pendency of the stay. The bankruptcy court, in June 2015, pointedly noted that to the extent Ocwen may have violated the stay order, any such violation that may have occurred was "clearly not knowing or wil[l]ful." (Order on Emerg. Mot. at 2.) In contrast, Judge Lenard, in her decision reviewing that order on appeal, found that Ocwen "appears to have willfully violated the automatic stay," noting that the bankruptcy court's conclusion to the contrary "lacks factual support in the record." J. Lenard Order at 8, 8 n. 10. Upon remand, the bankruptcy court did not address the alleged willfulness of Ocwen's violation of the stay.

Liebman's complaint about this purported deficiency is unavailing. To begin with, Judge Lenard's remand order did not actually find the bankruptcy court's determination that there was no willfulness to be clearly erroneous. Instead, she merely expressed disagreement with the bankruptcy court's conclusion based on the record before her. Thus Liebman's contention that the "direct contradiction" between the two orders is fatal to the bankruptcy court's ultimate conclusion is without merit. More importantly, however, the bankruptcy court's conclusions on remand did not in any way rely on either Ocwen's willfulness or lack of willfulness. Liebman has not argued that the bankruptcy court's failure to factor the willfulness issue into its analysis was in error.

### D. Issue (4): Liebman fails to establish that the bankruptcy court erred in evaluating the *Stockwell* factors.

The Court believes the bankruptcy court properly corrected its stay order to reflect its intent that the stay should not have been labeled an automatic stay. Alternatively, in the event this was improper, the Court will evaluate Liebman's claim that the bankruptcy court erred in concluding the circumstances of this case warranted retroactively lifting the purported automatic stay.

"The Eleventh Circuit Court of Appeals has long recognized that bankruptcy courts may annul the automatic stay in appropriate circumstances in order to grant retroactive relief from the automatic stay to validate a postpetition foreclosure sale." *In re Rivera*, No. 9:15-BK-08721-FMD, 2016 WL

513900, at *3 (Bankr. M.D. Fla. Feb. 9, 2016) (citing *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.1984); *In re Williford*, 294 F. App'x. 518, 521 (11th Cir. 2008). Many courts look to the factors set forth in *In re Stockwell* in order to evaluate the propriety of retroactive relief. 262 B.R. 275. In the final analysis, "[t]he bankruptcy court's determination of whether to annul the stay is made on a case-by-case basis and falls within the wide latitude of the court." *In re Rivera*, 2016 WL 513900, at *3 (citing *In re Stockwell*, 262 B.R. at 280). Ultimately, a bankruptcy court's decision to annul an automatic stay will only be disturbed upon a finding of an abuse of discretion. *In re Williford*, 294 F. App'x at 521.

Here, the bankruptcy court noted the following. First, the foreclosure sale proceeded in state court because, at least in part, Liebman failed to timely obtain a written order reflecting the bankruptcy court's stay. (Order on Remand at 11.) Second, Futura had no knowledge of the bankruptcy when it purchased the townhome at the sale. Third, after the sale, the bankruptcy court, recognizing the mix-up, advised Liebman, that it would nevertheless vacate the sale so long as she could confirm a bankruptcy plan. Liebman, however, failed to timely file and confirm a plan. The bankruptcy court also recited a litany of facts and described various convoluted litigation paths pursued by Liebman, and her husband, in both state and federal courts, that supported its finding that Liebman has not proceeded in good faith: "[Liebman] and her non-debtor spouse seek the benefits this Court has to offer . . . but fail to meet their obligations." (*Id.* at 13.) Additionally, the bankruptcy court noted "there is little, if any, equity in the Property" and the property is not necessary for an effective bankruptcy reorganization. (*Id.* at 14.) Moreover, the bankruptcy court predicted that, in light of Liebman's financial situation, had Ocwen sought relief from the stay, it likely would have been granted prior to the sale. (*Id.*) Further, according to the bankruptcy court, not granting retroactive relief "would bring unnecessary expense to the creditor(s), as the various parties would be left with the expense of undoing the sale, only to find themselves with an unconfirmable plan, a loan obligation ripe for stay relief and thereafter, subject to another foreclosure sale." (*Id.* at 15.) Lastly, based on the record before it, the bankruptcy court found that returning the property to Liebman would be unjustifiably detrimental to both Ocwen and Futura. (*Id.* at 15–16.) And, in that regard, Liebman has utterly failed to address how either of these creditors might be reimbursed for their losses upon a vacation of the sale. (*Id.*)

Liebman details numerous disagreements she has with the bankruptcy court's evaluation of these various *Stockwell* factors. Within Liebman's very

long list of grievances—against the bankruptcy court, the bankruptcy trustee, Ocwen, Ocwen's attorney, Futura, and Liebman's homeowners' association—she fails to establish, or even allege, that the bankruptcy court abused its discretion in evaluating the propriety of retroactive stay relief in this case. The Court is certainly not unsympathetic to the plight of a property owner losing her home to a foreclosure sale. Nor is the Court unmindful of some measure of fault that other actors—aside from Liebman—bear in possibility accelerating or exacerbating this loss. But based on the presentations of the parties, the Court is nevertheless unable to conclude that the bankruptcy court abused its discretion in finding retroactive relief from the purported automatic stay warranted.

### 4. Conclusion

Liebman has not established reversible error. Having reviewed the parties' briefing, the relevant legal sources, and the record before it, the Court **affirms** the bankruptcy court's decision. The Clerk is directed to **close** this case and **deny** any pending motions **as moot**. Further, based on the Court's order, the need for oral argument has been obviated. The hearing previously set for **January 25, 2018** is thus canceled.

**Done and ordered** at Miami, Florida, on January 22, 2018.

Robert N. Scola, Jr.
United States District Judge

Copies via U.S. mail and email to:

Andrea Rosen Liebman
P.O. Box 3661
Hallandale, FL 33008

j3732@aol.com